STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES AND OPERATIONS, DIVISION OF AIRPORT LEASING, Appellant,

v.

Nathaniel NEAL d/b/a International Porter Company, Appellee.

No. 7547.

Supreme Court of Alaska.

Dec. 28, 1984.

Martha T. Mills, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Tim MacMillan, Kalamarides, MacMillan & Richard, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

MATTHEWS, Justice.

This appeal concerns the State Department of Transportation and Public Facilities' (DOT/PF) termination of a permit to provide porter services at the Anchorage International Airport. Nathaniel Neal obtained a five year, non-exclusive permit to provide services at the Anchorage airport, terminable by the state on ten days' notice. DOT/PF terminated the permit with adequate notice. Neal filed suit, claiming that DOT/PF's regulations entitled him to a pre-termination hearing and that the cancellation constituted a breach of contract. DOT/PF appeals from the superior court's grant of partial summary judgment requiring it to reinstate Neal's right to conduct his porter service pending an administrative hearing on the issue of whether his permit should be cancelled. We reverse.

I. FACTUAL AND PROCEDURAL BACKGROUND

Nathaniel Neal operated a skycap porter service at the Anchorage International Airport from 1954 to 1981. Until 1979, he operated this business in accordance with a contract with several airlines. Neal had no direct arrangements with the state permitting him to operate his porter service, but leased space in the airport for use as a baggage storage room.

In 1978, Neal filed suit against the airlines in a contract dispute. In October, 1979, the airlines cancelled Neal's contract.

Despite the cancellation, Neal continued to operate his porter service without explicit authorization from anyone. In March, 1980, he was informed by Claude Millsap, the new State Director of Airport Leasing, that he would need to obtain an agreement with the state in order to continue his operations. He wrote a letter applying for the exclusive privilege of operating a porter service at the airport. Millsap responded with a "letter of non-objection" expressing the state's non-objection to Neal's operation of a baggage service from April 1, 1980, to April 1, 1985, but refusing the request for an exclusive right. The letter provided that the "non-objection" could be revoked by the state for any reason and at any time on ten days' written notice. Neal signed and returned the letter, agreeing to its conditions.

Since 1975, Neal had leased space from the airport to use for a baggage storage service. The final lease for part of this space expired on February 15, 1981. The lease for the remainder of the space expired on October 1, 1981, but included a special covenant allowing either party to cancel on thirty days' notice.

On March 23, 1981, Millsap wrote to Neal informing him that the state had decided to put the exclusive right to operate a porter and baggage storage service in the original terminal building up to bid.[1] Millsap therefore stated that his 1980 letter of non-objection, as well as Neal's lease for storage space, would be terminated effective May 31, 1981.

Neal submitted a bid for the porter service concession. The bid opening was conducted on April 22, 1981. Neal was not the successful bidder. He promptly took action. Neal filed this case in superior court on April 28, 1981, seeking an injunction and a declaration that he was the only qualified bidder. On April 30, 1981, Neal filed a notice of appeal with the DOT/PF appealing from the award of the contract "to a person other than himself." On May 11, 1981, Neal filed another notice of appeal with the DOT/PF. The full text of the May 11th notice of appeal is set forth in the margin.[2]

---

1. In early 1981 Neal had submitted a successful bid for the exclusive right to provide porter services in the new Satellite Terminal Building.

2.                    NOTICE OF APPEAL

TO:   The Department of Administration
      State of Alaska
ATTENTION:   Patrick Ryan
             Deputy Commissioner
NOTICE IS HEREBY GIVEN that Nathaniel Neal appeals from the expressed intention of awarding the bid for airport leasing to the alleged highest bidder and requests an opportunity for a hearing on the matter for the following reasons:

1. The awarding to the highest bidder is contrary to AS 37.05.240 and to AAC 15.100 inasmuch as these make no provision for the award as indicated the plans are being made to award.

2. The type of service as to be rendered here involves more than a merely simple lease and should not be controlled completely by the amount of money offered.

3. The aggrieved bidder, Nathaniel Neal, in view of having no other means of livelihood and having performed this service for 27 years should be given credit for his experience and should have been treated like the other parties who started out when he did 27 years ago but were given franchises which they were allowed to sell and were not put to the burden of having to compete each year in order to keep up their services. This right has been taken away from Nathaniel Neal.

4. Nathaniel Neal already has the personnel and the equipment with which to continue to perform these services and this should be taken into consideration.

5. Nathaniel Neal has a business license for the performance of this service and this likewise should be taken into consideration as there is no showing that any of the other bidders are licensed to perform the service. Appellant calls attention to the fact that in the past certain airlines have been given franchises and unfettered control over porter service activities at the airport without the payment of any sums whatsoever to the state of Alaska and appellant alleges that it is the influence of these airlines and collusion of these airlines with State officials which is in reality causing a scheme to be practiced by which he is deprived of his only means of making a living which he has had for the past 27 years.

WHEREFORE, appellant prays for a full hearing on this matter and an opportunity to present evidence showing why he should not

Neal received a hearing on his notices of appeal on May 26, 1981. At the hearing he described the history of his development of the porter service and his arrangement with the airlines, and argued that he had been unfairly deprived of a franchise like that granted to other concession operators at the airport. He protested the cancellation of his right to operate a business that he had built up over 27 years. He also claimed that the bid process was unfair because it did not account for the skill and experience needed to run a porter business successfully.

The hearing officer found that the bidding procedure had been properly conducted. He also found that the notice provision of the letter of non-objection requiring ten days' notice of revocation had been satisfied. He recommended denying Neal's appeal. That recommendation was adopted, and the concession was awarded to the high bidder.

Neal amended his complaint in this case four times. In the fourth amended complaint filed October 7, 1982, he alleged that the state had failed to notify him of his right to a hearing regarding termination, and had further failed to provide him with a fair hearing.[3]

The parties filed cross-motions for summary judgment. The trial court found that Neal was improperly deprived of his right to an administrative hearing prior to the termination of his right to operate a porter service. It therefore granted Neal's motion for partial summary judgment and ordered that the privilege of operating the porter service be restored to Neal. It denied DOT/PF's summary judgment motion.

On appeal, DOT/PF asserts that it was not required to hold a hearing and that, in any event, Neal received a sufficient hearing on May 26, 1981.

## II. RIGHT TO A HEARING UNDER DOT/PF REGULATIONS

■ Under 17 AAC 40.382,

[b]efore the termination or cancellation of a lease or other interest granted under this chapter, the department [of Transportation and Public Facilities] will provide the lessee with notice and an opportunity to be heard.

The interests granted under Chapter 40 of 17 AAC (which concern aviation) include leases, easements, rights-of-way, privileges, and permits. The trial court concluded that the state's 1980 letter of non-objection granted Neal a privilege under Chapter 40. It held that the terms of 17 AAC 40.382 entitled Neal to a hearing before that privilege could be terminated.

DOT/PF contends that it was not required to afford Neal a hearing because his interest was expressly terminable on ten days' notice. It argues that 17 AAC 40.382 does not require a hearing when a lease or agreement is terminable by its terms at any time and for any reason.

The terms of the regulation clearly require that DOT/PF provide the holder of any interest an opportunity to be heard and to present reasons why the state should not terminate that interest. An opportunity to be heard does not become meaningless because DOT/PF may terminate on ten days' notice. DOT/PF could not have terminated Neal's privilege for discriminatory or bad faith reasons. *See Mitford v. de Lasala,* 666 P.2d 1000 (Alaska 1983). Neal's statements, both at his May 26 hearing and in his original complaint, indicate that he believed that he was the victim of collusion between the state and the airlines. Those allegations are tantamount to a charge of bad faith, and if Neal had proven them, the termination of his right to conduct his porter service would have been invalid. We conclude that 17 AAC 40.382 gave Neal the right to a hearing.[4]

be deprived of his right to operate the service which he has operated throughout the years.

**3.** In a separate action, Neal appealed DOT/PF's decision after his hearing to the superior court.

The court upheld the Department's decision, and Neal did not appeal that ruling.

**4.** The trial court held that Neal was entitled to a hearing at which he could raise "questions of fact regarding the question of whether the plain-

## III.  OPPORTUNITY FOR HEARING

Neal's May 11th notice of appeal complained both of the termination of his right to operate a porter service and the failure to award him the new contract.[5] Neal alleges "collusion of these airlines with state officials which is in reality causing a scheme to be practiced by which he is deprived of his only means of making a living...." and complains of a "right" that "has been taken away from Nathaniel Neal." The prayer for relief states a request for a hearing where Neal can present evidence "showing why he should not be deprived of his right to operate the service which he has operated throughout the years."

On May 26 a hearing on both notices of appeal was held. Neal testified at length about his belief that he had been badly treated, both by the airlines and by the state. Neal's counsel stressed the arbitrariness of the treatment Neal had received and the unfairness of the DOT/PF's decision to cancel his right to operate the porter service. The state attempted to establish that Neal had received his alleged ill treatment at the hands of the airlines, rather than the state. No evidence offered by Neal was excluded.

The hearing officer's findings were primarily directed to the question of the award of the new contract. No findings were made concerning bad faith or discrimination. However, the hearing officer did note that an appropriate notice of termination of Neal's interest was given.

▮▮▮ We have reviewed the record of the hearing. The standard of review of administrative adjudications is that findings of fact will be set aside unless supported by substantial evidence on the whole record. *City of Fairbanks v. APUC*, 611 P.2d 493, 495 (Alaska 1980). The record does not contain substantial evidence of bad faith or discrimination on the part of the state. The lack of findings by the hearing officer on these points is unimportant because findings favorable to Neal would not have been sustainable.

## IV.  CONCLUSION

For the reasons stated, Neal was not deprived of his right to a hearing. He requested and received a hearing at which he failed to present evidence that proved that his termination was illegal.

The judgment of the superior court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

COMPTON, Justice, dissenting.

Although I agree that Neal was entitled to a hearing under 17 AAC 40.382, I disagree with the court's conclusion that he received such a hearing on May 26, 1981. In my view, the trial court was correct in holding that Neal was improperly deprived of a hearing. I believe that it erred in ordering him reinstated to his right to operate a porter service, however, and I would therefore remand for determination of an appropriate remedy.

Neal received a hearing on May 26, 1981, as part of the state's aggrieved bidder procedure under 2 AAC 15.100.[1] This hearing

---

tiff's privilege must under the law be revoked and if not legally required questions of policy regarding whether the plaintiff's privilege should be revoked." We conclude that Neal was not entitled to a hearing to argue that DOT/PF should not have put the porter service contract up for bid for policy reasons. The purpose of an adjudicative hearing is to determine specific facts, not to decide broad questions of policy. *See* K. Davis, Administrative Law of the 70's § 7.00–11, at 275 (1976).

5.  The two issues are interrelated. A wrongful termination of Neal's right to operate the porter service could be remedied by reinstatement of the right. This could only be accomplished if the new contract was not awarded to another bidder.

1.  2 [Administration] AAC 15 [Purchasing]. 100 [Aggrieved Bidder] (Eff. 2/24/72; am. 8/31/75) provides:
    (a) An aggrieved bidder may, within five days after award of a contract, appeal to the department [of Administration] for hearing.
    (b) A bidder requesting hearing shall
    (1) submit his appeal in writing within five days of the award;
    (2) explain in detail all of the reasons for the appeal;

was not held pursuant to 17 AAC 40.382,[2] nor did it purport to be. Indeed, the issues that could have been adjudicated in hearings before separate agencies were entirely different: the hearing under 2 AAC 15.100 concerned only matters relating directly to the bidding process, while a hearing under 17 AAC 40.382 would have determined whether the termination of Neal's permit—which occurred *before* the bidding process began—was proper.[3] Neal's suggestion in his May 11, 1981, Notice of Appeal that his permit was terminated because of collusion between the airlines and the state would have been relevant to the aggrieved bidder hearing only if such collusion contaminated the bidding process itself. Neal, however, does not allege any collusion between other bidders and the state.[4]

Although Neal argued at the May 26 hearing that his permit was improperly terminated, he addressed his comments to a forum that was powerless to respond to his complaints. The Department of Administration hearing officer was no more authorized to address the propriety of the termination of Neal's permit (as distinguished from the subsequent rejection of his bid) than if he had sat on behalf of the Commercial Fisheries Entry Commission or the Alcohol Beverage Control Board. If 17 AAC 40.382 has any meaning at all, it surely requires that a hearing be held before an officer who is empowered to consider evidence that a lease or permit was improperly terminated and to recommend an appropriate remedy. The hearing officer at the May 26 hearing had no such authority.[5] I

(3) send a copy of his appeal to all interested parties, including all other bidders.

(c) The appeal for hearing will be reviewed by the commissioner and the aggrieved bidder will be advised within 15 days whether his appeal was accepted or rejected and, if rejected, the reasons for that action.

(d) When appeal for hearing is accepted, it will

(1) be scheduled as soon as practicable, but not later than 20 days after acceptance;

(2) be held in the town where the sealed bid was publicly opened;

(3) be made known to all interested parties at least five calendar days prior to the hour of hearing;

(4) be recorded in its entirety.

(e) All interested parties wishing to be heard at the hearing should submit a written brief of their statement to the hearing officer no later than 24 hours prior to hour of hearing.

2. 17 [Transportation and Public Facilities] AAC 40 [Aviation]. 382 [Termination of Lease] (Eff. 4/27/79) provides:

Before the termination or cancellation of a lease or other interest granted under this chapter, the department [of Transportation and Public Facilities] will provide the lessee with notice and an opportunity to be heard.

3. In note 5 of the court's opinion, it is stated that termination of the right to operate a porter service and failure to award Neal the new contract are interrelated. This is correct only with respect to Neal's remedy, not the merits of his underlying claim.

4. The court notes that the hearing officer for the May 26 hearing made no findings concerning bad faith or discrimination, but did "note that

an appropriate notice of termination" was given Neal. 693 P.2d at 825. The only "appropriateness" found was that the letter of nonobjection required a 10-day notice, and Neal was given a 69-day notice.

Neal appealed the decision of the Department of Public Transportation and Facilities, which had accepted the hearing officer's recommendation, to the superior court. In that proceeding, *Nathaniel Neal, d/b/a International Porter Company v. Department of Transportation*, 3AN 81–4485 Civil, the Department's bidding procedure was sustained. The Final Decision on Appeal, dated August 16, 1982, concluded that

(1) The only issue properly before this court in the instant appeal is whether appellee, Department of Transportation, abused its discretion by failing to consider, in its competitive bidding procedure, appellant's experience, history and length of service as a porter at the airport.... It is this issue, and only this issue, which was identified in appellant's April 30, 1981 and May 11, 1981 Notices of Appeal [to the Department of Transportation] herein. Further, it was this issue which was the subject of the hearing before appellee's hearing officer on May 26, 1981, from which appellant presently appeals.

That court expressly declined to consider issues relating to the permit and storage lease, since they were not properly raised and were the subject of an independent action filed by Neal then pending in superior court, which eventually gave rise to this appeal.

Neal did not appeal from that decision.

5. It is remarkable to suggest that evidence presented to a tribunal to adjudicate a claim over which the tribunal has no jurisdiction is not substantial evidence on the whole record,

therefore conclude that Neal's May 26 hearing did not satisfy the requirements of 17 AAC 40.382.

Although Neal was entitled to a hearing, and, in my view, did not receive one, I do not believe that he was entitled to reinstatement to his right to operate a porter service.[6] The trial court's order of reinstatement, had it been carried out, would have seriously prejudiced the rights of the successful high bidder for the porter service concession, who had been operating the concession since June 1, 1981. The court apparently was not apprised of the existence of this innocent third party until after it had ordered Neal reinstated, when the state moved for a stay. Once informed that a third party was involved, however, the court should have vacated that part of its decision that ordered reinstatement.[7] It could then have proceeded to consider the propriety of damages to compensate Neal for the loss of his permit.

I would therefore affirm the trial court's holding that Neal was improperly deprived of a hearing, reverse its order that he was entitled to reinstatement pending a hearing, and remand for a determination of damages.

thereby not only excusing the failure of the tribunal to address the claim, but also presumably foreclosing the erring litigant from raising the claim before a tribunal which does have jurisdiction.

6. Neal did not request reinstatement in his motion for summary judgment; he asked only for a determination that he had been deprived of a hearing and was entitled to damages.

7. DOT/PF's failure to present evidence that another company had been providing porter services may have resulted from its surprise at the trial court's choice of remedy. The state could nevertheless have requested that the court vacate the remedy, or have moved for reconsideration under Civil Rule 77(m). Had it done so, the court would have had the opportunity to reconsider its ruling in light of evidence that the rights of a third party were affected.